The first case for argument is 21-3310 Northern District of Iowa, Hannah Jesski et al v. Dakota, MN & Eastern RR Good morning, Mr. Zimmerman. May it please the court, Robert Zimmerman for appellants, the estate of Dixie Blazier and Glenda and Robert Mundus, I would like to reserve two minutes for rebuttal. The judgment of the district court should be overturned for two reasons. First, Iowa law requires train men to maintain a proper lookout to identify specific individual hazards and avoid collisions when possible, and the issue of whether the train men acted reasonably must be submitted to a jury. Second, the FRA safety standards prescribe the minimum standards for trains, including setting speed limits when a locomotive's lights are out. DM&E exceeded the speed limit under these circumstances, and this issue also must be submitted to a jury for determination. If the judges will permit, I will start with lookout. It is the province of the jury to determine whether the train men of the DM&E single engine locomotive carrying no cars and no freight had maintained a proper lookout and took reasonable actions to avoid a collision that resulted in two deaths and serious injuries to a third individual. These train men, an engineer on the right side of the operator's cab and a conductor on the left, knew this ungated crossing. But isn't it reasonable for the train men to assume that the driver of the car would follow the law and stop before the intersection? It certainly depends on the circumstances, Your Honor, and in these circumstances, there was an unwavering approach of a vehicle traveling in excess of 50 miles per hour. I thought there was swerving. There was swerving about four to five seconds before the accident, Your Honor. But that swerving doesn't matter because it takes 5.4 seconds lead time to get a stop? Well, Your Honor, so the issue is... Does the swerving matter or not? You can take a moment, but please address the swerving. Yes, Your Honor. With respect to the swerving issue, I think it does matter. The issue is when should the train men have been maintaining a proper lookout versus when they started to look to the left of the train. The engineer testified that he looked to the left of the train about 10 seconds before the collision and about five or so seconds before the collision, he lost sight of the vehicle. The conductor testified that he did not look... Now, the engineer said unwavering, right? Correct. Okay, proceed. Correct, and the unwavering approach going in excess of 50 miles an hour was observed by the engineer. He lost sight of the vehicle, did not communicate with the conductor. The conductor, meanwhile, did not look to his left to observe the vehicle until five seconds before the crash. And you're right. The issue of timing is very close and very important here. Had the conductor been looking to his left for a longer amount of time, he would have observed the vehicle making that unwavering approach, traveling 50 miles an hour or more, and would have had an opportunity to stop this accident. Had he perceived this unwavering approach, he could have hit the brakes himself. Well, if it's unwavering, you think he has to hit the brakes? Well, Your Honor, I think the cases that deal with reasonableness really come down to three types of cases. One set of cases where those in the train didn't see the vehicle until it was too late, those that immediately braked when they saw the vehicle, and here, those that didn't brake when they saw the vehicle and had the chance to brake. That issue is for the jury to determine what the reasonableness is and when the operator should have braked the train. Had the conductor been looking to his left, and defendant's expert, Pele's expert, Brian Heikkila, admitted that the train operator should have been keeping a proper lookout of the crossing for as much as 15 seconds before the accident. For the conductor not to be looking to his left until five seconds before the accident at a time when he could not stop the accident was the negligent act. Counsel, help me understand your argument. As I understand it, it's not just that he had to have been keeping a lookout, but there had to have been some movement of the vehicle that would have indicated a need to brake prior to 5.4 seconds. So just the vehicle approaching the crossing, as Judge Grunder mentioned, would just be in the normal course of driving. What evidence is there of some movement of the vehicle that would have alerted them to the need to stop? The speed first is one of the issues. And while the appellee makes note that the SUV could stop within 111 feet, that would be an extremely aggressive stop. So these train men had a responsibility to look at the specific circumstances of this individual case and crossing. Someone coming in excess of 52 miles an hour in the unwavering nature. The time in which the train could have prevented the accident is 3.9 seconds. And there's been an addition of 1.5 seconds based upon a perception and reaction time. Our expert did not include that in his report, but testified at deposition that a 1.5 second perception and reaction time could be used in analyzing train cases. Here, had the conductor been looking to his left and seeing an unwavering approach coming directly toward the crossing in excess of 50 miles an hour, and observed the swerve, at that time he could have hit the brake had he been actually holding the brake and could have avoided the accident. The issue is perception and reaction time. When you are perceiving the oncoming vehicle, that is going to cut down on the perception and reaction time and could have prevented this accident from occurring. Okay, what's the closest, this is Nebraska law, right? Or Iowa law, sorry. This is Iowa law, right? This is Iowa law. So tell me what the closest case is that guides us on Iowa law. Sure, there are two, your honor. The Tillman case. The facts of the Tillman case, and that is 115 Northwestern 2nd, 165, it's the Iowa Supreme Court in 1962. The driver of a vehicle approached the track oblivious as to the approaching train and failed to heed the warning whistle. And we acknowledge in this case, your honor, that Mr. Blaser should have stopped his vehicle. We are not walking away from that. Of course, there the crew members were talking about it all the time. I'm sorry, your honor. In Tillman, the crew members were talking about the situation all the time, right? Well, in Tillman, the crew did nothing to avoid the collision except continuously sound the vehicle. The speed of the vehicle remained constant, and the engineer admitted he did not reduce the throttle until after the collision. The issue, and as described in Anderson cited by the appellee, is not what they knew, it's what they should have known. The holding in Tillman was that the essential question is whether the train crew did what a reasonably prudent person would have done under the circumstances. Although trains do have the right of way, it does not relieve a train crew from responding to conditions ahead. What about the Simmons case? Isn't Simmons a closer case? Sure. Simmons is distinguishable for the following reasons, and just to get into the facts briefly, the engineering was keeping a proper lookout and could neither avoid nor recognize the peril when observing the vehicle at the earliest opportunity at 100 feet away. To get out the facts of the law, an unwavering approach does not qualify as a specific individual hazard. Your honor, so with respect to the unwavering approach, if that was the only issue here, then perhaps Simmons would preclude a claim. The unwavering approach should have alerted the train men that there was a potential for an issue. Had the conductor been actually looking at the unwavering approach or had the engineer communicated with the conductor, the conductor would have had the ability to perceive the unwavering approach and react when the swerve occurred, which would have cut down the perception reaction time from 5.4 seconds down closer to the 3.9 to avoid the accident. The other case, if your honor, if I may, is the Stewart case. The crew first observed the vehicle 250 to 300 feet prior to the accident, looked away, and did not know if the vehicle was going to stop. The court found that the speed, lookout, and warning were issues properly submitted to the jury. Proper lookout and duty are often fact-sensitive questions proper for a jury. Any speed may be negligence if, under the circumstances of the particular situation, a slower rate of advance is called for in the exercise of reasonable care. Since I'm going to reserve two minutes, I would like to just address the speed issue, if I may, unless there are other questions on the lookout. With respect to the speed issue, the parties agree that the locomotive was traveling 22.1 mile per hour leading up to the accident. Immediately following the accident, the parties agree one of the auxiliary lights and one of the two headlights were non-operative. Plaintiffs acknowledge there is no claim of excessive speed if the light broke during the accident. But if the auxiliary light burnt out before or during the trip, 49 CFR 229.125D, the specific text, imposes a 20 mile per hour federal speed limit. But that didn't apply to the headlights, right? Just to auxiliary lights. Say it again. Just to auxiliary ditch lights. Right, but it doesn't apply to the headlights, right? Correct. Sections A through C apply to the headlights, D through G apply to the auxiliary lights. With respect to the auxiliary light, the DM&E designee and their expert both admitted that had the light actually been preserved, we would be able to see whether it burnt out or broke. This happened at noon. Correct. Lights don't usually mean much at noon. Was there a testimony that it was a normal day with normal lighting? Normal day, normal lighting. Would the lights affect anything in this case? Well, the lights are clearly a safety device meant to alert the vehicles approaching. Unfortunately, we can't ask Mr. Blazier what he saw, what he observed, but there is no exception. Well, you had a passenger, though, who didn't testify on this, correct? Yes. Ms. Mundus was unaware of the train approaching. But with respect to the light, the light is there to help alert. There is no exception if the train is painted red. This is a single-engine locomotive. It's not one that is carrying many, many cars. Counsel, let me ask the same question a different way. On page 9 of your brief, you argue, had the DM&E train crew followed the FRA regulation, this accident would never have occurred. Yes. What evidence is there to support that argument? Well, two reasons. Number one, had the DM&E train been traveling at the designated speed, there would not have been a collision. Had they actually just throttled down to under 20 miles per hour, 347 feet from the accident site, the SUV would have been able to pass. So the causation issue is really twofold. Number one, had they been doing what they were supposed to, they would not have been in the crossing at the time that the SUV was, and the accident wouldn't have occurred. With respect to the lighting, it is a piece of evidence. How persuasive that evidence is is in the province of the jury. A jury could believe that an auxiliary light, which is there for safety purposes under the act, could be seen or at least assist the SUV operator in seeing the train. Just briefly with respect to the bulb, DM&E's counsel and investigators were on site within hours of the incident. The language is plain of 229.125D, and the investigators should have known that the 20 mile an hour speed limit should have applied. They had the black box data. They knew that the vehicle was going, the locomotive was going more than 20 miles per hour. The appellee's brief discusses 229.125D and its operative language of equipped with operative lights. They italicize equipped with but fail to identify operative. Nothing in 229.125 allows a train company to lower the speed limit, I'm sorry, to raise the speed limit from 20 miles an hour to 25 miles per hour. If this light was not on, it was a 20 mile per hour speed limit per the federal rules. I'll reserve the rest of my time. Very well, thank you. Thank you. May it please the court, my name is Alice Loughran, representing the defendant appellee. It's a pleasure, honor to be before the court, particularly in person. This accident, while tragic, was not caused by a breach of a duty on the railroad's part. I would start with the speed claim, because the federal regulations govern the duty, and the exception is really what we're talking about when we get to the specific individual hazard. So on the speed claim, plaintiffs say that the train breached a federal regulation. It was a lighting regulation, because the locomotive was operating at a speed of 22 miles per hour rather than 20. But this is a regulation that imposes a lighting requirement. So the risk that the regulation is trying to protect against is that the drivers won't see the locomotive due to inadequate lighting. And in this case, at least on the briefings, it seemed that it was undisputed that the lighting, that that lack of lighting played no role whatsoever in the cause of this accident. Well, now, they've got to have actual causation cases. You know, after all, the parents of someone who does something at fault are the actual cause of the person being there. So we're in proximate cause land. Correct. Which is typically State Supreme Courts just draw lines. So what's the best case you've got on telling us where the line is in Iowa law in this sort of situation? Well, the Iowa Supreme Court most recently addressed causation, but this was in the context of the lookout claim. And they grant, they affirmed a grant of a summary judgment for lack of causation, and that was written by Justice Mansfield, and it was a 2021 decision that starts with a W. And I can find it quickly. Wormisk versus Canadian, sorry, versus Canadian National Railroad. 2021, very strong opinion written by Justice Mansfield, both on the federal scheme as well as the state causation issues. So Justice Mansfield recognized that, yes, causation is typically a question for the jury, but there are circumstances when, as a matter of law, there's just no question for the jury, and that would be in this case because there's no evidence whatsoever that the lack of lighting from that one ditch light made any difference in this accident. In fact, the accident would have happened the exact same way had the light been working, according to what plaintiff's theory is. Counsel, even if the lighting wasn't the cause, could the violation of a federal regulation be a cause? Well, so we don't think there's a violation of the federal regulation, so I just wanted to, and I'll get to that in a second, but you still need, for a negligence action, a causation. And so the lighting requirement, which is in the regulation and what the risk is being trying to protect against is that people won't see the locomotive. But Mr. Zimmerman told me that had they been following the speed limit under his version of the law, that this would have never happened. Well, he's saying, yes, and he is saying that if the train had stopped, I think it's more than 90 feet or about 40, 30 yards before, and if it slowed down to 20 miles an hour rather than 22, that the car would have cleared. But still, that is the speed, whereas the lighting requirement is not the cause. But let me get to the question of the interpretation. Well, but what do you make of that causation argument? I mean, it seems to me it's almost maybe a step too far removed, but I'd be interested, you know, because the theory is with the light out, it had to go 20, and then the accident wouldn't have happened. Is there a problem with that kind of two-step causation? Well, we think so. I mean, in sort of the Falls Graph type view of the world, that you're looking at what is the risk that's trying to be protected by the duty. And here, the risk is a lighting requirement. We know that because the trains can go at any speed, or at least speed permitted by the track classification. Well, the risk is a collision, right? Correct. Okay, proceed. Did I say? Well, no, I'm not sure. You said the risk is the lighting, I thought. Yes, that's what I am saying. Yes. I think the only risk is a collision that all these regulations are about, right? Well, maybe in a broad sense under the federal safety, but this particular regulation is about lighting. Or risk of collision caused by lack of lighting. Yes. Depending on how you frame it. Correct, correct. But we still have arguments that there was no breach of a federal duty. And that's the question about how you interpret this federal regulation. And there's not much case law on how you interpret it. But the regulation has three paragraphs that are really pertinent. And the regulation was promulgated in March 1996. And the FRA, the Federal Railroad Administration, in paragraph D, set a standardization requirement for locomotive equipment. So that paragraph says by the end of the year, that is 1997, each locomotive operating over one or more public crossings at speeds greater than 20 miles an hour must be equipped with operative auxiliary lights. So basically telling we want to make sure that these locomotives have the equipment by the end of 1997. And then paragraph F says that the auxiliary lights must be continuously illuminated, except as provided in the operating rules, unless the FRA disapproves. And then paragraph G explains what to do if one or more light fails. So according to this paragraph, if a light fails in route, the locomotive may continue to its destination. Now those are the auxiliary lights, right? If a headlamp fails in route, you can't continue in service unless both auxiliary lights are working, right? That's A to I. Well, so I'm not as familiar with the headlight because it's not an issue in the case. It's 229.125. Well, they say a headlamp's out too, right? No, they're not making a claim under that part of the regulation as far as the headlight. Yeah, but you have to have the headlight and both auxiliary lights. They're not saying one headlamp was out? Correct me if I'm wrong. I don't think the headlight that's being referred to in that regulation. I have not seen in the briefing a violation of the paragraphs before you get to the auxiliary lights. Let's go slowly. After the collision, one ditch light and one headlight was out, correct? Mm-hmm. Okay, now headlights have a different rule, right? Right. 229.125 A to I, and it's a continuing service that you can only continue in service if one headlamp goes out, if a second one and both auxiliary lights keep operating, right? Okay, can you tell me which paragraph? Sure it is. Are you reading from G? No, I'm reading from A to I. Okay, A to I. 229.125 A to I. Okay. Coach, correct me if I got it wrong here. Okay, so we have the headlight. Yep. A locomotive equipped with two of them can keep continuing, that means it can go another foot. Right. Only if a second headlamp and both auxiliary lights continue to operate. Right. Well, they say one headlamp was out, one auxiliary light was out, so they've got a claim there, don't they? I don't know that they're arguing the claim about the headlight. I have not seen this claim as part of the regulations. Okay, they've waived any argument you're claiming about a headlamp. I have not seen any argument. And about that section is waived. Right, that's what I'm saying, is waived. And to the extent that the court is going to get into the interpretation of the regulations, we encourage the court to look at the FRA's guidance on how to interpret this regulation since it was promulgated. So after the FRA promulgated the regulation in 1996, in 1998 the FRA issued a technical bulletin, which is on the FRA website, that explains how the regulation is supposed to work, including with respect to what happens when a ditch light or auxiliary light fails en route and how does that impact the speed. And so that is on the FRA website. It's a matter of the FRA's interpretation of its own regulation, of which so long as it's consistent with the plain language, it should be given deference. And that interpretation is consistent with what we have said in our brief on how to interpret this regulation. Did the plaintiffs ever bring some kind of a real spoliation claim against you? What's the status of that? So I did not think that that was preserved. I saw that it came out. No, I don't see it in the briefs. But just tell me, how was it raised or not raised? So first of all, I did not see that it was raised in the opening brief. I did not see the word spoliation. I understand. What happened at court? What happened at trial? In about two sentences. I know we're afield. I heard you loudly on that. Go ahead. So assuming it's not waived, is that what you're asking? Right. Very well put. So after the accident, two weeks after the accident, obviously when you talk about spoliation, you need notice. You need notice of a duty to preserve. And you don't need to take this much time. Did they do a motion for spoliation? No, they did not do a spoliation. Okay, thank you. Proceed with your argument. Okay, great. And so the district court said that the spoliation argument was inconsequential because it didn't know that. Proceed. And so we also, the district court found that there's no proof supporting the regulation. But let me get to supporting the alleged violation of the regulation because it's not clear what their theory is. Was it out before they started? Was it out during? You know, what's your proof on that? Because there's no question that plaintiffs bear the burden. Well, your time's getting short. Address the conductor's testimony that at five seconds I saw a swerving vehicle. And there's some Iowa law if there's swerving, you're supposed to stop. Yeah. Yeah. But that's at five seconds. And, of course, as you know, your claim is you needed 5.4. Right. But should the conductor have seen it about 10 seconds? No, because that is, so what we're, I'm a little concerned about Iowa law and Missouri law, first of all, because what we're dealing with is federal law, I think. When you're talking about federal regulations and an exception. I'm sorry, I'm switching to the lookout. Yes, I am referring to the lookout claim as well. The lookout has to turn on negligence in Iowa law, doesn't it? I'm sorry? Doesn't the negligence claim turn on Iowa law? The duty is set by, it was, the duty is an exception to the federal regulations. And the Supreme Court acknowledged in a footnote that there may be this duty. And that since then, the courts have limited that. So since the Supreme Court's decision in 1996, and that was the Easterwood decision that has that footnote, they've limited this exception to a specific individual hazard. And that's what Justice Manfield talks about in the most recent Supreme Court Iowa decision. About the overlay of this specific individual hazard as exception, as did the district court here. And when you're talking about a specific individual hazard, it can't be generalized conditions. It can't be a driver coming up to the crossing, because that happens all the time. When locomotives are proceeding through public crossings. It has to be something specific, something that alerts the conductor, the engineer, that something is wrong and that this collision is going to be imminent. And here, the point of no return, when you take into account reaction time, was over 400 feet. And plaintiffs admit, or at least I thought they admitted in their brief, and their expert admitted, I think it's page five of their opening brief, that the crew should have recognized the need to brake when the vehicle was between 250 and 300 feet from the crossing. And so by that point, which is more than 400 feet, the point of no return had passed. There was nothing the crew could do. And so therefore, it's a lack of causation on that claim as well. Now the crew... And you say that lack of causation comes from some sort of federal law? No, so the duty... Oh, I thought you were trying to tell me that a moment ago. No, no, so let me just, I'm not being clear and I apologize. For both of these claims, this is a negligence claim. And you have your duty and your causation and your damage elements. The duty claim is set by federal regulation. So you substitute out the state law and you put in the federal requirement. And in this circumstance, it's an exception recognized by the U.S. But the Iowa Supreme Court, in that Wormer-Kirshen case, said plainly that breach of the duty of lookout are not preempted by the Federal Railroad Safety Act if it's a specific individual and local, like a normal crossing. Right, the court... Counsel, it's a question of Iowa law. Okay, I... I'm voting that case, and that's a 2021 case, and he's discussing at length Easterwood, right? Yeah, he's discussing at length Easterwood. Justice Mansfield is a superb justice, so I defer to him on that. But regardless, he used the same test, specific individual hazard. So it really doesn't make a difference. And when it became a specific individual hazard, that is, collision was imminent, then it was just too late. There was nothing the crew could do. And if you look at the testimony, it was at the point at 250 feet to 300 from the crossing. The car was about there. When the conductor first saw that the driver was behaving a little erratic, and he told the engineer to stop. And the engineer at that point was already reaching for the lever, and that's at app 774, but it was too late. Because by that point, it was, you know, excuse me, the point of no return had already passed. Thank you, Your Honor. Thank you. Thank you. With respect to the speed issue, Your Honor is correct. There was a headlight and an auxiliary light that were both out at the time of, or after the accident, I should say. And you are right, while A through C covers headlights, there is a section dealing with when the auxiliary lights must be on, depending on whether the headlight is on or not. So whether the train should have been completely stopped, whether the train should have been going under 20 miles per hour, under either of those circumstances, this accident does not occur. In the Wormer-Skirchin case, and I apologize, the first observation of the vehicle was too late. They braked immediately. There was a six seconds based upon the facts in that case. But that falls into the category of the first observation of the vehicle was beyond the point. With respect to the lookout, the district court noted that defendant considers the vehicle to be in the zone of danger when it is on the tracks or at least traveling past the white stop line. If this court were to accept defendant's argument, it would render proper lookout for approaching vehicles meaningless, as a train crew would never be able to avoid a collision since the zone of danger, by definition, would be past the point of no return. The appellee argues in its brief, the crew was not obligated to slow or stop the train when the vehicle was swerving because the car could have stopped in time to avoid the collision. The issue is what are the facts of this case and what would a reasonable person do in those circumstances? What is meant by swerving exactly? That was not addressed beyond the term swerving and driving erratically. Those were the two terms that the conductor used. He says it's a little bit erratic. Sure. Yes. Okay. Thank you, counsel. We appreciate your appearance in person and your arguments. The case is submitted and we wish you an opinion in due course.